JENNIFER RAE GUNTER
Email: Jennof4@gmail.com
1601 G St., The Dalles, OR 97058
Phone: 541-993-5366
CHRISTINA LYNN MILCAREK
Email: tina.milcarke@gmail.com
1496 Foxglove Street, Woodburn, OR 97071
Phone: 708-932-0959
CHELSEA ANNE WEBER
Chels3721@yahoo.com
19000 S Pear Rd.
Oregon City, OR 97045
Phone:  503-422-0933

FILED 24 AUG '22 15:43 USDC-ORP

Plaintiff, appearing Pro Se

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

**JENNIFER RAE GUNTER, an Oregon Elector; and
CHRISTINA LYNN MILCAREK, an Oregon Elector;
And CHELSEA ANNE WEBER, an Oregon Elector**

Case No.: 3:22-CV-1252-MO

Plaintiff(s),

v.

**MOTION FOR EMERGENCY
PRELIMINARY AND
PERMANENT INJUNCTION
OF VERIFIED COMPLAINT**

**SHEMIA FAGAN, in her individual capacity
and as Secretary of State for the State of
Oregon**

Defendant()

---

# UNITED STATES DISTRICT COURT

## FOR DISTRICT OF OREGON

## PORTLAND DIVISION

**JENNIFER RAE GUNTER, an Oregon Elector; and
CHRISTINA LYNN MILCAREK, an Oregon Elector;
And CHELSEA ANNE WEBER, an Oregon Elector**

Plaintiff(s),

v.                                         Case No.:

**SHEMIA FAGAN**, in her individual
capacity and as Secretary of State for
the State of Oregon

Defendant(s).

## MOTION FOR EMERGENCY PRELIMINARY AND PERMANENT INJUNCTION OF VERIFIED COMPLAINT

LR 7-2 CERTIFICATION The undersigned hereby certifies that this Complaint complies with

the applicable word count limitation because it contains 7,574 words including headings,

footnotes, and quotations, but excluding the caption, and signature block.

## PARTIES

1. Jennifer Rae Gunter is a legal resident of Wasco County, Christina Milcarek is a legal

   resident of Marion County and Chelsea Anne Weber is a legal resident of Clackamas County

   in the State of Oregon and all were registered voters in the state of Oregon during the

November 3, 2020 elections, and voted, and plans to vote in future Oregon elections,

including the upcoming November 8, 2022 election.

2. Defendant Shemia Fagan is an Oregon resident and was elected on November 3, 2020 as

OREGON SECRETARY OF STATE ("SOS").  In this capacity, she is the chief elections

officer and is responsible to obtain and maintain uniformity in the application, operation and

interpretation of the election laws under ORS 246.110.[1]


## BASIS FOR JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §1331, as

this action seeks to protect civil rights under the 14th and 10th amendments of the US

Constitution.

   a. "The district courts shall have original jurisdiction of all civil actions arising

      under the constitution, laws, or treaties of the United States."

4. This court has jurisdiction to grant injunctive relief based on 28 U.S.C. §§1343(a)(3)

authority to do so under federal rule of civil procedure 65.

5. This Court has authority to grant declaratory relief based on 28 U.S.C. §§ 2201, 2202, and

Rule 57 of the FRCP.

6. This court has jurisdiction to award nominal income compensatory damages under 28 U.S.C.

§§1343(a)(4).

7. Venue is proper for supplemental jurisdiction under 28 U.S.C. §1367.

8. Venue is proper generally under 28 U.S.C 1391.

---

[1] https://oregon.public.law/statutes/ors_246.110
PAGE 3 -- MOTION FOR EMERGENCY PRELMINARY AND PERMANENT INJUNCTION OF VERIFIED
COMPLAINT

9.  Venue is proper because Defendant performs her official duties in the State of Oregon, affecting every county therein. As well as the SOS's conduct in Oregon directly impacts the outcome of federal elections held collectively in all states.

## OVERVIEW AND FACTS

10. Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

11. Plaintiff has standing under; Lujan v. Defenders of Wildlife, U.S. 112 s. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) and Elmore v. McCammon (1986) 640 F Supp. 905: "…. The right to file a lawsuit pro se as one of the most important rights under the Constitution and laws." "Allegations such as those asserted by the petitioner, however in artfully pleaded, are sufficient", "which we hold to less stringent standards than formal pleading drafted by a lawyer."

12. Jenkins v. McKeithen, 395 U.S. 411,411,421 (1959); Picking v. Pennsylvania R. Co. 151 Fed 2nd; Pucket v Cox, 456 2nd 233 "Pro se pleadings are to be considered without regard to technicality; pro se litigants' pleadings are not to be held to the same standards of perfection as lawyers. "The plaintiffs civil rights pleadings were 150 pages and described by a federal judge as "inept". Nevertheless, it was held "Where a plaintiff pleads pro se in a suit for protection of civil rights, the Court should endeavor to construe Plaintiffs Pleading without regard to technicalities."

13. Plaintiffs bring this emergency preliminary and permanent injunction and complaint to restore and preserve the integrity of Oregon elections and the voting records and machines purchased and used during the election of November 3, 2020, primary election held on May

17, 2022 and the upcoming election November 8, 2022. In support of the claims set forth herein, Plaintiffs allege and aver as follows:

14. The secretary of state has irreparably damaged plaintiffs' interest of their vested sovereignty in the office in the State of Oregon, set forth by her failure to perform fiduciary duties, causing ultimate disenfranchisement to plaintiffs.

15. Plaintiffs seek redress for the abuse and irreparable devastation of their vested sovereignty, constitutional rights, vested interest, and protection from our elected officials. Plaintiffs remain unwavering to seek redress for the violations set forth against them of their sovereign rights and for all vested people of Oregon.

   a. ((1) plaintiff has suffered injury as protected vested interest are actual or eminent, concrete, and particularized. (2) the 14th amendment protects our right to vote. (3) **the 10th amendment protects states from federal intrusion**. (4) plaintiffs were registered voters during the national election of 2020 and (5) defendants failed to meet required legally establish laws and fiduciary duties, to ensure a free an equal election injuring plaintiffs and all Oregonians.

      i. The 10th Amendment says that the Federal Government only has those powers delegated in the Constitution. If it isn't listed, it belongs to the states or to the people. All the rights afforded and protected to those rights not mentioned are for the people under this amendment. Yet what is through information and belief lingers is a strict conflict to any involvement of federal government by the disenfranchisement with COTS, CISA, DHS but not limited only to those respectfully. It is a

clear violation, of federal government being involved in states elections reserved to and for the people. These involvements restrict civil liberties and rights to free speech cast by the American voter for their choice candidate, but are oppressed and interfered, by foreign and federal government. This simply is not acceptable and cannot stand as such.

1.  Department of Homeland Security (DHS) Call with State Election Officials on Cybersecurity in 2016[2] shows Federal and Private involvement.

    a.  As part of the ongoing effort, the Secretary also announced that **DHS is convening a Voting Infrastructure Cybersecurity Action Campaign with experts from all levels of government and the private sector** to raise awareness of cybersecurity risks potentially affecting voting infrastructure and promote the security and resilience of the electoral process.

2.  DHS under Obama scanned five states election systems in 2016[3].  Oregon was one of those states and if our machines are never connected to the internet (according to the SOS), how was this possible?

---

[2] https://www.p2016.org/integrity/dhs081516pr.html
[3] https://thepostmillennial.com/department-of-homeland-security-under-obama-scanned-five-states-election-systems-in-2016/

PAGE 6 – MOTION FOR EMERGENCY PRELMINARY AND PERMANENT INJUNCTION OF VERIFIED COMPLAINT

3. Steven Trout Email to SOS Candidates in 2020 (see Exhibit L of Verified Complaint) shows Federal involvement.

   a. In Oregon we have created a model for the rest of the country through our TIGER (Threat Information Gathering and Election Resources) team. It is a dedicated team to help secure our elections that consists of members of the Elections Division, **Department of Homeland Security, Cybersecurity Infrastructure Security Agency, Federal Bureau of Investigations**, Oregon National Guard, Oregon Office of Emergency Management, Oregon Titan Fusion Center, US Postal Service Inspector General, and the Cyber Security Services section of the Oregon Chief Information Security Officer's office.

4. Plaintiff Milcarek has open public records requests about DHS Conversations (SOS – no reply since my last email to them on 7/16/22) and Agents involved with our Elections (Marion County – never confirmed original request dated 7/21/22 – sent 3rd request on 8/22/22) which are both unfulfilled. (See Exhibit R of Verified Complaint)

b. Plaintiffs come before this court with the acquired knowledge that we are still free on paper. The Constitution affords us the right to elect the state or federal officials we want, but due to the actions of those elected, our rights have been

deprived and our interests damaged. Democracy does not function properly if citizens do not trust the results of elections. Our Founding Fathers intentionally excluded Congress and gave state legislatures the authority to run state elections. The state of Oregon has sovereignty to govern itself. The people that reside in the state of Oregon are indeed the ultimate sovereign.

16. The methods by which elections at the local, state, and Federal levels in Oregon were conducted in 2020, and are being conducted in 2022, **cannot** be shown to provide the fair elections guaranteed to **every citizen under U.S and Oregon Constitutions**, U.S. Constitution 14th Amendment, Article I § 8 & Article II, § 1 & 8 of the Oregon Constitution.

17. The right to vote is protected by the Equal Protection Clause and the Due Process Clause. U.S. CONST. amend. XIV, § 1, cl. 3-4. Because "the right to vote is personal," Reynolds, 377 U.S. at 561-62. "[e]very voter in a federal … election, whether he votes for a candidate with little chance of winning or for one with little chance of losing, has a right under the Constitution to have his vote fairly counted." Anderson v. United States, 417 U.S. 211, 227 (1974); Baker v. Carr, 369 U.S. 186, 208 (1962). Invalid or fraudulent votes debase or dilute the weight of each validly cast vote. Bush II, 531 U.S. at 105. The unequal treatment of votes within a state, and unequal standards for processing votes raise equal protection concerns.

18. All Oregonians **HAVE A RIGHT** to a verifiable and transparent vote count in line with these standing Supreme Court of the United States decisions. All three cases have recognized that the right to vote consists of not only casting a ballot, but having that vote counted accurately, as it was cast.

a. "We regard it as equally unquestionable that the right to have one's vote counted is as open to protection by Congress as the right to put a ballot in a box." See United States v. 13 Mosley, 238 U.S. 386 (1915).

b. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." See Wesberry v. Sanders, 376 U.S. 17 (1964).

c. "The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." — U.S. Supreme Court Chief Justice Earl Warren, Reynolds v. Sims (1964)

d. "No one would deny that the equal protection clause would . . . prohibit a law that would expressly give certain citizens a half-vote and others a full vote. . . . [T]he constitutionally guaranteed right to vote and the right to have one's vote counted clearly imply the policy that state election systems, no matter what their form, should be designed to give approximately equal weight to each vote cast. . . . [A] state legislature cannot deny eligible voters the right to vote for Congressmen and the right to have their vote counted." See Reynolds v. Sims, 377 U.S. 563 (1964), citing Colegrove v. Green, 328 U.S. 549, 328 U.S. 569-571.

e. The unequal treatment of votes within a state, and unequal standards for processing votes raise equal protection concerns. Justice Thomas wrote in his dissent regarding the state of Texas v. Pennsylvania: "here we have the

opportunity to do so almost 2 years before the next federal election cycle. Our refusal to do so by hearing these cases is befuddling. One wonders what this Court waits for. We failed to settle the dispute before the election, and thus providing clear rules. Now we again fail to provide clear rules for further elections. The decision to leave election law hidden beneath a shroud of doubt is baffling. By doing nothing, we invite further confusion and erosion of voter confidence. Our fellow citizens better and expect more from us. I respectfully dissent "State of Texas vs. Commonwealth of Pennsylvania, State of Georgia, state of Michigan, and state of Wisconsin (2020). Justice Thomas went on to say; "the court was thought to be the least dangerous branch and we may have become the most dangerous." He further warned against," destroying our institutions because they don't give us what we want, when we want it."

19. By utilizing voting machines tested by Voting System Test Laboratories (VSTL) with improper Election Assistance Commission accreditation at the time of certification and with the potential for the Trapdoor mechanism described in Exhibit A of Verified Complaint[4], Oregon has deprived its voters of the capability of knowing that their vote was accurately counted.  Additionally, the SOS has direct control over the Risk Limiting Audits (RLA), which are not randomly chosen by county clerks, but are given as directive from the Secretary of State.  Therefore, when counties do their RLA by hand and the count comes out "perfectly"… this could be by design as the SOS may have chosen precincts or batches that were **known** ahead of county tabulation.

---

[4] https://storage.courtlistener.com/recap/gov.uscourts.wied.92717/gov.uscourts.wied.92717.9.13.pdf
PAGE 10 – MOTION FOR EMERGENCY PRELMINARY AND PERMANENT INJUNCTION OF VERIFIED COMPLAINT

## VIOLATIONS TO EAC, HAVA, & OREGON LAW AND RULES FOR ELECTIONS

20. Voting System Test Laboratories, further known as (VSTL), Pro V&V, NTS Huntsville (formerly Wyle Laboratories), known further as (NTS), and SLI Compliance (SLI had other names – SysTest and SLI Global), accreditation(s) provided from the Election Assistance Commission, further known as (EAC), for the 2020 General Election and subsequent elections thereafter, were not in compliance with the HAVA act, nor within written policy of the **EAC Voting System Test Laboratory Program Manual, version 2.0, (OMB-3265-0018)[5] (See Exhibit B of Verified Complaint), Section 2 through 5** which violate the federal standards for laboratory testing and accreditation set forth in the **HELP AMERICA VOTE ACT 2002, (HAVA ACT)[6] , Subtitle B § 231.** (See Exhibit C of Verified Complaint)

21. This lack of VSTL EAC accreditation not only violates Federal codes, pursuant to 52 U.S. Code § 20971(b)(2)(a), and official policy of the EAC for accrediting VSTL, but also violates Oregon Elections Division Chapter 165 Rule 165-008-0350[7], ORS 246.550[8] and ORS 246.046[9].

22. These VSTLs were used in testing, certification, and approval of the Voting Machines or vote tally systems further known as (VSM) used in the Oregon 2020 General Elections and all elections thereafter.

23. Oregon Elections Division Chapter 165 Rule 165-008-0350 Section 1 states: All voting systems submitted for certification pursuant to ORS 246.550 (Examination and approval of

---

[5] https://www.eac.gov/sites/default/files/eac_assets/1/28/VSTLManual%207%208%2015%20FINAL.pdf
[6] https://www.congress.gov/107/plaws/publ252/PLAW-107publ252.pdf
[7] https://oregon.public.law/rules/oar_165-007-0350
[8] https://oregon.public.law/statutes/ors_246.550
[9] https://oregon.public.law/statutes/ors_246.046

PAGE 11 – MOTION FOR EMERGENCY PRELMINARY AND PERMANENT INJUNCTION OF VERIFIED COMPLAINT

equipment by Secretary of State) **must be certified by the Elections Assistance Commission (EAC) or be examined by a federally accredited voting systems testing laboratory (VSTL)**".

   a.   Section 3 states:  A complete Oregon Voting System Certification Application includes:

   i.   Section 3(b) states: VSTL Test Report documenting, at a minimum that the voting system meets or exceeds the Voluntary Voting System Guidelines Version 1.0 promulgated by the U.S. Election Assistance Commission in the following areas:

   ii.   Section 3(c) states: Oregon Test Report, documenting at a minimum that the voting system adheres to the Oregon Voting System Certification Standards contained in Appendix 1, which is incorporated into this rule by reference and also:

   1.   Section 3(c)(A) states: Confirms that the voting system presented is the same as the one certified by the Elections Assistance Commission (EAC) or as the one documented in the VSTL test report submitted under (3)(b) of this rule;

24. ORS 246.550 Section 1 states:  The Secretary of State shall publicly examine all makes of voting machines or vote tally systems submitted to the secretary and determine whether the machines or systems comply with the requirements of ORS 246.560 (Requirements for approval of equipment), and can safely be used by electors.

25. ORS 246.046 states: "The Secretary of State and each county clerk shall diligently seek out any evidence of violation of any election law."

26. Per the (VSTL) Voting System Test Laboratory Program Manual ver. 2.0 effective May 31, 2015, page 38, Sec 3.6.1 and page 39 Sec 3.8[10]. Certificate of Accreditation: A Certificate of Accreditation shall be issued to each laboratory by vote of the Commissioners. **The certificate shall be signed by the CHAIR of the Commission** and state:

   a. "3.6.1.3. The effective date of the certification, **which shall not exceed a period of two (2) years**." (This is not an indefinite approval, but specific.)

   b. "3.8 A grant of accreditation is valid for a period not to exceed two years. A VSTL's accreditation expires on the date annotated on the Certificate of Accreditation."

27. The (VSTL) program requires accredited laboratories to submit a renewal application package to the EAC Program Director, consistent with the procedures of Section 3.4, no earlier than 60 days before the accreditation expiration date, and no later than 30 days before their accreditation expire. Plaintiffs cannot find that Pro V&V and SLI Compliance submitted an application prior to the expiration date in 2017 and possibly 2020 respectively.

   a. If the VSTL's did not submit their renewal application packages within the guidelines to the EAC and the Program Director, the EAC was remiss in their duties in acknowledging the expiration of accreditation. FOIA requests have been submitted to the EAC and National Institute of Standards and Technology (NIST) but as of this filing, we have received no responsive records, with an estimated EAC time of fulfillment of October 31, 2022 (See Exhibit Q of Verified Complaint).

---

[10] https://www.eac.gov/sites/default/files/eac_assets/1/28/VSTLManual%207%208%2015%20FINAL.pdf

     b.   Pro V&V and SLI Compliance may not have submitted a timely renewal application package, thus allowing their accreditation to expire.  If true, then after expiration, they also tested and issued test reports that were the basis for fraudulent EAC Certification and Oregon SOS Approval of Voting systems.

28. Per the document published on the OREGON SECRETRARY OF STATES website[11] regarding voting systems used in Oregon Counties, ES&S, Clear Ballot, and Hart have been certified for use.

     a.   ES&S is allegedly approved for Baker, Benton, Clatsop, Columbia, Gilliam, Grant, Jefferson, Lake, Lincoln, Malheur, Morrow, Polk, Sherman, Tillamook, Umatilla, Union, Wallowa, and Wheeler Counties.

     b.   Clear Ballot is allegedly approved for Coos, Crook, Curry, Deschutes, Douglas, Harney, Hood River, Jackson, Josephine, Klamath, Lane, Linn, Multnomah, Wasco, and Washington Counties.

        i.   According to the "CERTIFICATE OF APROVAL" (See Exhibit D of Verified Complaint) Clear Ballot Group, Clear Vote Voting System (Clear Count 2.1 and Clear Design 2.1) was certified for sale, lease, or use in all elections in Oregon.  This document published by Elections Director Stephen N. Trout on February 18, 2020 noted:

           1.   "Specifically, they have submitted ClearCount version 2.1 and ClearDesign version 2.1 along with their test lab report by EAC Certified tester Pro V&V.

---

a.  According to the EAC Website[12], there is no mention of ClearCount version 2.1 or ClearDesign version 2.1 being EAC certified.

   i.  Plaintiff Gunter was told on 8/17/22 by the EAC they have no responsive records for information regarding ClearCount 2.1 or ClearDesign 2.1. (See Exhibit E of Verified Complaint)

   ii.  Plaintiff Milcarek was told on 8/18/22 by the SOS the report took longer to find and they posted on the SOS Web site **in a newly added section** titled, "Voting System Vendors Certified in Oregon".  The report was titled, **"Test Report for State Certification Testing - Clear Ballot Group ClearVote 2.1 Voting System"**. [13] (See Exhibit F of Verified Complaint)

b.  Also, under a Pro V&V[14] Engineer Change Order (ECO) Analysis Form on the EAC website for Microsoft Windows O/S Patching, which was submitted on August 25, 2020, they state this change affects the following ClearVote systems:

---

[12] https://www.eac.gov/voting-equipment/certified-voting-systems
[13] https://sos.oregon.gov/elections/Documents/vote-systems/CBG-ClearVote-2-1-Test%20Report-00-FINAL.pdf
[14] https://www.eac.gov/sites/default/files/eac-documents/ECO%20Analysis%20Form%20CBG%20ED%2020-02.pdf

PAGE 15 – MOTION FOR EMERGENCY PRELMINARY AND PERMANENT INJUNCTION OF VERIFIED COMPLAINT

      i. **EAC-certified systems**: ClearVote 1.5 and ClearVote 2.0

      ii. **State-level system**: ClearVote 2.1

  c. Hart is allegedly approved for **Clackamas, Marion, and Yamhill Counties**.

      i. According to the "CERTIFICATE OF APPROVAL" Hart InterCivic Verity 2.4 Voting System document published by Elections Director Stephen N. Trout on June 15, 2020, "EAC Certified tester SLI Laboratories" was the VSTL used.

29. The last available EAC accreditation for VSTL NTS, was signed on May 4th, 2010 and only effective through April 27th, 2012[15] (See Exhibit G of Verified Complaint) and no further accreditations are listed on the EAC website[16]. Furthermore, Pro V&V only shows a 2015 Accreditation Certificate which expired in 2017.  This means that the EAC Accreditations expired for the VSTL's yet were approved by the Secretary of State. (See Exhibit H of Verified Complaint)

30. SLI Compliance's most recent EAC accreditation was signed on January 10, 2018 and despite the effective date stating through January 10, 2021, was supposed to only be effective for 2 years, expiring on January 10, 2020 per the EAC's VSTL Program Manual ver. 2.0 effective May 31, 2015, page 38, Sec 3.6.1 and page 39, Sec 3.8[17] . (See Exhibit I of Verified Complaint)

---

[15]
https://www.eac.gov/sites/default/files/voting_system_test_lab/files/Wyle%20Accreditation%20certificate%202020
10.pdf
[16] https://www.eac.gov/voting-equipment/accredited-laboratories
[17] https://www.eac.gov/sites/default/files/eac_assets/1/28/VSTLManual%207%208%2015%20FINAL.pdf

31. According to the EAC Website and a letter published on 1/27/2021[18]:

    a. **Due to the outstanding circumstances posed by COVID-19, the renewal process for EAC laboratories has been delayed** for an extended period. While this process continues, SLI retains its EAC VSTL accreditation. EAC released their last memo on 7/22/2021[19], stating SLI compliance has yet to receive their new accreditation but that the "accreditation remains effective until revoked by a vote of the EAC pursuant to 52 US code 20971(c)(2)". Revocation has nothing to do with the above – mentioned guidelines of the EAC VSTL program manual which state the STL accreditations are **not** to exceed 2 years.

    b. **The WHO Declared COVID-19 a Pandemic on 3/19/20[20]**

    c. SLI Compliance was required by the program rules to submit their renewal application package between November and December of 2019 (based on the 2 year rule) but the Covid-19 Pandemic was not declared until March of 2020. There was not a pandemic in 2017, 2018, or even respectfully 2019. Which leads to the reasoning that this is not a viable excuse.

32. The last available EAC accreditation for VSTL Pro V&V was signed on 2/24/2015 and was only effective through February 24, 2017. It was also signed by the Acting Executive

---

[18] https://www.eac.gov/sites/default/files/voting_system_test_lab/files/SLI_Compliance_Accreditation_Renewal_delay_memo012721.pdf

[19] https://www.eac.gov/sites/default/files/voting_system_test_lab/files/VSTL%20Certificates%20and%20Accreditation_0.pdf

[20] https://pubmed.ncbi.nlm.nih.gov/32191675/

Director and not by the EAC Chair as required per VSTL Program Manual ver. 2.0 effective

May 31, 2015, Sec 3.6.1[21]. (See Exhibit H of Verified Complaint)

## ELECTION SOFTWARE WHISTLEBLOWER

33. Voting systems in use in the United States now, and in 2020 election, are subject to

tampering through a "trapdoor" mechanism inherent in all election systems. This "trapdoor"

mechanism is described in detail in Exhibit A of Verified Complaint, affidavit of

Terpesehore Maras, filed under penalty of perjury on December 1, 2020 in case #2:20-cv-

01771-PP in the 2nd Judicial District of the Denver District Court in Denver, Colorado[22] and

signed on November 29, 2020.  (See Exhibit A of Verified Complaint)

34. C-span's Washington Journal interviewed Dr. Alex J. Halderman, a professor of engineering

and computer science at the University of Michigan, on electronic voting machine security.

Dr. Halderman was asked about a recent headline, "Hackers can easily break into voting

machines used across the U.S."[23]  He agreed and further stated that "Election infrastructure

across the United States remains weakly protected and vulnerable against sophisticated

foreign hackers."[24]  He then warned that "we have a lot of work to do as a country before

2020 and elections to come."  Dr. Halderman during his security research, rigorously tested

every single kind of voting machine.  Vulnerabilities were discovered "where someone could

hack in, put malicious software on the voting machine, cause it to be sabotaged or even

---

[21]

https://www.eac.gov/sites/default/files/voting_system_test_lab/files/Pro_VandV_accreditation_certificate_2015.pdf

[22] https://storage.courtlistener.com/recap/gov.uscourts.wied.92717/gov.uscourts.wied.92717.9.13.pdf

[23] https://www.salon.com/2019/08/14/hackers-can-easily-break-into-voting-machines-used-across-the-u-s-play-doom-nirvana/

[24] https://www.c-span.org/video/?463480-4/washington-journal-j-alex-halderman-discusses-election-security

PAGE 18 – MOTION FOR EMERGENCY PRELMINARY AND PERMANENT INJUNCTION OF VERIFIED COMPLAINT

silently steal votes."[25]  Dr. Halderman submitted a sworn declaration[26] (See Exhibit J of

Verified Complaint) in Curling v. Raffensperger[27] detailing the security vulnerabilities of the

election machines in general.  He also filed a motion in support of a preliminary injunction

because the vulnerabilities of the machines were so great[28]. (See Exhibit K of Verified

Complaint)

      a.  Dr. Halderman also noted under No. 9 of his Motion in Support:

           i.  Components of Georgia's election system **that are not directly**

**connected to the Internet might nonetheless be targeted by**

**attackers**. Nation-state attackers have developed a variety of

techniques for infiltrating non-Internet-connected systems, including

by spreading malware on removable media that workers use to copy

files in and out[29].  Attackers could employ this method to infect the

state or county EMS and spread from there to scanners and BMDs

when workers program them for the next election. In this way, an

attack could potentially spread from a single point of infection to

scanners and BMDs across entire counties or the whole state, in the

same way that malware could have spread through the old DRE

---

[25] https://www.c-span.org/video/?463480-4/washington-journal-j-alex-halderman-discusses-election-security
[26] https://www.documentcloud.org/documents/21069743-2021-09-21-notice-of-filing-dckt-1177_1
[27] https://www.courtlistener.com/docket/6139924/curling-v-raffensperger/
[28] https://voterga.org/wp-content/uploads/2021/08/Public-Halderman-Findings.pdf
[29] A well-known example of this ability, which is known as "jumping an air gap," is the Stuxnet computer virus, which was created to sabotage Iran's nuclear centrifuge program by attacking factory equipment that was not directly connected to the Internet. Kim Zetter, "An Unprecedented Look at Stuxnet, the World's First Digital Weapon," Wired (Nov. 3, 2014),
https://www.wired.com/2014/11/countdown-to-zero-day-stuxnet/

PAGE 19 – MOTION FOR EMERGENCY PRELMINARY AND PERMANENT INJUNCTION OF VERIFIED
COMPLAINT

system, which was not effectively air-gapped or otherwise reasonably

secured.

35. Terpesehore Maras is a trained Cryptolinguist, holds a completed degree in Molecular and

Cellular Physiology with formal training in other sciences such as Computational Linguistics,

Game Theory, Algorithmic Aspects of Machine Learning, and Predictive Analytics.

Terpeshore Maras, possesses more than two decades of experience in mathematical

modeling and pattern analysis as well as lesser experience in network tracing and

cryptography. Additionally, she has extensive involvement in overseeing OCONUS elections

and the HAVA Act for CONUS elections. The information presented in the affidavit is

personal, first-hand account clarifies in detail as to why EAC Accreditation is so important to

ensure fair elections. Key portions of the affidavit emphasizing proper EAC Accreditation

and VSTL testing are as follows:

"11. VSTL's are VERY important because equipment vulnerabilities allow for

deployment of algorithms and scripts to intercept, alter, and adjust voting tallies."

"20. VSTLs are the most important component of the election machines as they examine

the use of COTS (Commercial Off–The-Shelf)"

"22. COTS are preferred by many because they have been tried and tested in the open

market and are most economic and readily available. COTS are also the SOURCE of

vulnerability therefore VSTLs are VERY important. COTS components by voting system

machine manufacturers can be used as a "Black Box" and changes to their specs and

hardware make up change continuously. Some changes can be simple upgrades to make

them more efficient in operation, cost efficient for production, end of life (EOL) and even

complete reworks to meet new standards. They key issue in this is that MOST of the

COTS used by Election Machine Vendors like Dominion, ES&S, Hart Intercivic, Smartmatic and others is that such manufacturing for COTS have been outsourced to China which if implemented in our Election Machines make us vulnerable to BLACK BOX antics and backdoors due to hardware changes that can go undetected. This is why VSTL's are VERY important."

"23. The proprietary voting system software is done so and created with cost efficiency in mind and therefore relies on 3rd party software that is AVAILABLE and HOUSED on the HARDWARE. This is a vulnerability. Exporting system reporting using software like Crystal Reports, or PDF software allows for vulnerabilities with their constant updates."

"24. As per the COTS hardware components that are fixed, and origin may be cloaked under proprietary information a major vulnerability exists since once again third-party support software is dynamic and requires FREQUENT updates. The hardware components of the computer components, and election machines that are COTS may have slight updates that can be overlooked as they may be like those designed that support the other third -party software. COTS origin is important and the US Intelligence Community report in 2018 verifies that."

"36. The concern is the HARDWARE and the NON – ACCREDITED VSTLs as by their own admittance use COTS."

"37. The purpose of VSTL's being accredited and their importance in ensuring that there is no foreign interference/ bad actors accessing the tally data via backdoors in equipment software. The core software used by ALL SCYTL related Election Machine/Software manufacturers ensures "anonymity"."

(See Exhibit A of Verified Complaint)

36. According to the Cybersecurity & Infrastructure Security Agency (CISA)[30];

    a.   COTS Software Presents an Attractive Point of Attack

    b.   It Is Difficult to Verify the Security of COTS Products

37. Terpesehore Maras also provides evidence of the conflict of interest in VSM software and election result reporting. Two companies in particular, Huawei and Akamai, the latter of which is partnered with SCYTL. SCYTL receives the tallied votes on behalf of Dominion and, under contract with Associated Press (AP), provides the results for reporting. This shows that voting information is under the control of the companies that provide the Voting Systems. (See Exhibit A of Verified Complaint)

38. She further elaborates on the "trapdoor" mechanism available to alter votes via algorithms in shuffling or mixing process of which she observed in the 2020 election. An example of this can be found starting in point 44 of her signed affidavit.

In her own words,

"50. When the votes are sent to Scytl via Dominion Software EMS (Election Management System) the Trap Door is accessed by Scytl or TRAP DOOR keys (Commitment Parameters)."

"54. Scytl and Dominion have an agreement – only the two would know the parameters. This means that access is able to occur through backdoors in hardware if the parameters of the commitments are known in order to alter the range of the algorithm deployed to satisfy the outcome sought in the case of algorithm failure."

---

[30] https://www.cisa.gov/uscert/bsi/articles/best-practices/legacy-systems/security-considerations-in-managing-cots-software

"55. Trapdoor is a cryptotech term that describes a state of a program that knows the commitment parameters and therefore is able change the value of the commitments however it likes. In other words, Scytl or anyone that knows the commitment parameters can take all the votes and give them to any one they want. If they have a total of 1000 votes an algorithm can distribute them among all races as it deems necessary to achieve the goals it wants. (Case Study: Estonia)"

"62. Therefore, if decryption is challenged, the administrator or software company that knows the trap door key can provide you proof that would be able to pass verification (blind). This was proven to be factually true in the case study by The University of Melbourne in March. White Hat Hackers purposely altered votes by knowing the parameters set in the commitments and there was no way to prove they did it – or any way to prove they didn't."

(See Exhibit A of Verified Complaint)

39. Maras covers in great detail how 2020 Election reporting demonstrated this algorithm in key swing states as examples and further demonstrates plaintiff's claims on lack of VSTL EAC Accreditations, EAC violations of the HAVA Act, and the importance of robust testing of VSMs and EMS systems to help ensure fair elections. (See Exhibit A of Verified Complaint)

40. CONCLUSION: This affidavit presents unambiguous evidence of:

a. Foreign interference

b. Complicit behavior by the previous administrations from 1999 to present to hinder and disenfranchise the voice of the American people

c. Knowingly and willingly colluding with foreign powers to manipulate the outcome of the 2020 election

d. Foreign nationals, through investments and interests, assisted in the creation of the Dominion software

e. Akamai Technologies merged with a Chinese company that makes and distributes the COTS components of election machines hence causing foreign interference with local and national elections, why are we using foreign equipment in our United States?

f. US persons holding an office and private individuals knowingly and willingly oversaw fail safes to secure our elections

g. The EAC failed to abide by standards set in HAVA ACT 2002

h. The IG of the EAC failed to address complaints since their appointment regarding vote integrity 15

i. Christy McCormick of the EAC failed to ensure that EAC conducted their duties as set forth by HAVA ACT 2002

j. Both Patricia Layfield (IG of EAC) and Christy McCormick (Chairwoman of EAC) were appointed by Barack Hussein Obama and have maintained their positions since then

k. The EAC failed to have a quorum for over a calendar year leading to the inability to meet the standards of the EAC.

l. AKAMAI Technologies and Hurricane Electric raise serious concerns for NATSEC due to their ties with foreign hostile nations

(See Exhibit A of Verified Complaint)

41. Stephen Trout, Oregon Elections Director in 2020, was dismissed or fired after sending an email to the SOS candidates describing a litany of challenges faced by the elections division. The Defendant was alerted to all the aging and outdated machines, systems, end of life Microsoft support and more. (See Exhibit L of Verified Complaint)

a. In 2014 Oregon secretary of state website breach:  ORESTAR, business registry are now online[31].

b. In August of 2019, the Associated Press published, "Federal officials with Oregon, other states to protect elections against hackers"[32].

c. In May of 2022, Hackers hit web hosting provider linked to Oregon elections week before May primary vote.[33] "Secretary of State Shemia Fagan's office said people inputting records into the **ORESTAR** state campaign finance reporting system may have been affected."

d. U.S. Department of Homeland Security (DHS) notified 21 states that they were targeted by hackers during the 2016 election. Among those states notified by DHS were: Alabama, Alaska, Colorado, Connecticut, Delaware, Florida, Illinois, Maryland, Minnesota, Ohio, Oklahoma, **Oregon**, North Dakota, Pennsylvania, Virginia, and Washington[34].

e. Plaintiff Milcarek confirmed with Marion County Clerk they used Hart Verity 2.4 in the 2020 Election (See Exhibit M of Verified Complaint).  The Clerk also confirmed the exact equipment purchased and used in the 2020 Elections (See Exhibit N of Verified Complaint).  According to the EAC website and the Certificate of Conformance[35] for this version and Marion County's

---

[31] https://www.oregonlive.com/politics/2014/02/oregon_secretary_of_state_webs_1.html
[32] https://www.statesmanjournal.com/story/news/politics/2019/08/28/federal-officials-work-oregon-protect-elections-against-hackers-homeland-security-salem/2142902001/
[33] https://www.statesmanjournal.com/story/news/2022/05/10/hackers-hit-web-hosting-provider-orestar-linked-to-oregon-election-before-may-primary-ransomware/65354731007/
[34] https://www.washingtonpost.com/news/the-fix/wp/2017/09/23/what-we-know-about-the-21-states-targeted-by-russian-hackers/
[35] https://www.eac.gov/sites/default/files/voting_system/files/HRT-VERITY-2.4%20Certificate%20and%20Scope%2002-21-2020.pdf

PAGE 25 – MOTION FOR EMERGENCY PRELMINARY AND PERMANENT INJUNCTION OF VERIFIED COMPLAINT

equipment (COTS Software and Firmware), Microsoft Windows Embedded
Standard 7, Service Pack 1 was used and as per Stephen Trout's warning
letter, Senator Wyden's warning letter[36], and Microsoft announcement[37], this
version is no longer supported as of January 2020.

42. Senator Wyden warned Pro V&V and SLI Compliance of the importance of accreditation
prompting the EAC to release a series of memos explaining the reason why neither lab had
received their new certificates of accreditation[38] [39].

43. Plaintiffs feel devastatingly disenfranchised that they are attempting to educate themselves
on the laws and systems used in each of their counties along with state and federal rules but
Plaintiffs noting that the SOS and Country Clerks (who are under specific directives from the
SOS) are increasingly delaying or ignoring responses or using ORS 192.345[40] (23)(c) which
states the information is exempt from disclosure.  How can public records be exempt from
disclosure when it's state and county taxpayer money (electors) that pay for these systems
and property?  Note, Plaintiff's have not asked for copies of county or state security
procedures.

44. To have free and fair elections, Electors and County Clerks CANNOT blindly trust based on
the SOS or her directives.  County Clerks may be blindly trusting that the Oregon systems

---

[36]
https://www.wyden.senate.gov/imo/media/doc/071219%20Wyden%20Windows%207%20Letter%20to%20EAC.p
df
[37] https://support.microsoft.com/en-us/topic/october-13-2020-kb4580387-security-only-update-9781ea5e-4fab-
9f66-7528-
77e9c5649081#:~:text=For%20Windows%20Embedded%20Standard%207%2C%20extended%20support%20ends,
on%20the%20screen%20until%20you%20interact%20with%20it.
[38] https://www.wyden.senate.gov/imo/media/doc/wyden-pro-vandv-election-cybersecurity-letter.pdf

[39] https://www.wyden.senate.gov/imo/media/doc/wyden-sli-compliance-election-cybersecurity-letter.pdf
[40] https://oregon.public.law/statutes/ors_192.345
PAGE 26 – MOTION FOR EMERGENCY PRELMINARY AND PERMANENT INJUNCTION OF VERIFIED
COMPLAINT

and processes are in order, or that they are legally up to date. Without the Electors and County Clerks own due diligence, which is a crucial part of their fiduciary duty as a Clerk in our elections, it is an unacceptable way of implying deserved acceptance from the public of "just trust us, even without providing proper transparency and verifications."

45. It is very disturbing and shameful that the SOS assumes that the public is misinformed by their very own gathered court case affidavits, FOIA's and records request to the EAC and the SOS office along with their offices replies and lack thereof [41]. It is her very own fiduciary failure to keep transparency of an online public request log, with election records updated on the SOS Website. For almost 2 years information has not been available. Furthermore, invoking the public to submit records request for their vested interest in our state. One would be led to think she is assuming a role of implying her elected job is not of, by and for the people! As you can see the date of this public post 8/19/2022 her office is a bit behind in public transparency.

     a. See Exhibit O (in Verified Complaint) of Shannon Berlant's Affidavit of in-depth un-fulfilled records requests.

     b. See Exhibit P (in Verified Complaint) from Plaintiff Gunter's open records requests from the SOS in which 387 is marked completed by the SOS office when in fact ES&S and Hart InterCivic Test reports are NOT available on line.

---

[41] https://twitter.com/oregonsos/status/1560676938414313472?s=21&t=gKnmlzOX64PwPQrDp9^mTA

PAGE 27 – MOTION FOR EMERGENCY PRELMINARY AND PERMANENT INJUNCTION OF VERIFIED COMPLAINT



## CONCLUSION

46. There is an extreme urgency to Plaintiffs complaint and petition with the upcoming

destruction for the November 2020 election data as scheduled 22 months after the election on

September 3, 2022, ORS 254.535[42].    The many violations of VSTL EAC accreditations

render the EAC VSM and SOS certifications invalid. The reason for such policy and law is to

ensure that the VSM and their software do not have vulnerabilities that could be exploited to

undermine election integrity and are set forth by **EAC Voting System Test Laboratory**

**Program Manual, version 2.0, (OMB-3265-0018)[43]** , **Section 3.4, 3.6 and 3.8** to meet the

federal standards for laboratory testing accreditation set forth in the **HAVA VOTE ACT**

---

[42] https://oregon.public.law/statutes/ors_254.535
[43] https://www.eac.gov/sites/default/files/eac_assets/1/28/VSTLManual%207%208%2015%20FINAL.pdf
PAGE 28 – MOTION FOR EMERGENCY PRELMINARY AND PERMANENT INJUNCTION OF VERIFIED
COMPLAINT

**2002, (HAVA ACT)[44], Subtitle B § 231 (a) (1) (2) (b) (1).** Exhibit C in Verified Complaint, affidavit of Terpesehore Maras, filed under penalty of perjury on December 1, 2020 in case #2:20-cv01771-PP in the 2nd Judicial District of the Denver District Court in Denver, Colorado[45], explains the trapdoor mechanism in the encryption/decryption process, the conflict of interests with Scytl, the foreign interests involved, the EAC violations, the importance of VSTLs, and testing of COTS. The alleged approval by the Secretary of State for use in Oregon with such gaps in EAC policy and potential vulnerabilities violates our State Constitutional rights and laws, U.S. Constitution 14th Amendment, Article I § 8 & Article II, § 1 & 8 of the Oregon Constitution. As well, it violates 52 U.S. Code § 20971 and HAVA of 2002 § 231. For all the reasons above, a complete failure, dereliction of duties to provide safe and just elections are observed and further irreparable disenfranchisement of plaintiffs and Oregonians.

47. Plaintiffs are entitled to emergency, temporary, preliminary, and permanent injunctive relief by restraining Defendant from destroying the November 2020 election data and records as scheduled 22 months (**September 3, 2022**) after the election according to 42 USC 1974[46] and ORS 254.535 Section 3[47], until a thorough investigation of the software and its Trapdoor vulnerabilities can be undertaken and proper accreditation, applications and certifications can be confirmed and proven valid.

### PRAYER FOR RELIEF

---

[44] https://www.congress.gov/107/plaws/publ252/PLAW-107publ252.pdf
[45] https://storage.courtlistener.com/recap/gov.uscourts.wied.92717/gov.uscourts.wied.92717.9.13.pdf
[46] https://uscode.house.gov/view.xhtml?req=granuleid:USC-1999-title42-section1974&num=0&edition=1999
[47]
https://oregon.public.law/statutes/ors_254.535#:~:text=ORS%20254.535%20Preservation%20of%20certain%20m
aterials,retention%20of%20records%20Text%20Annotations%20%281%29

48. WHEREFORE, Plaintiffs pray for judgement against Defendant as follows:

49. That this Court assume jurisdiction of this Action;

50. That this Court compel the Secretary of State to immediately halt the use of any electronic voting machine in Oregon.

51. Request the Court to compel the Secretary of State office to issue a referral of a complaint under 52 U.S. Code §20511(2) to Attorney General Ellen R. Rosenblum and the Civil Rights Department of the Department of Justice to open an investigation of criminal and fraudulent election violations and allegations henceforth provided in this complaint with the full authority of 52 U.S. Code §20511(2) including but not limited to the impounding of election materials and electronic voting system.

52. That this Court compel the Secretary of State to immediately address (at the city, county, and state level) the lack of proper election machine certification and associated election fraud to cooperate in an investigation, and properly prosecute every entity violating Oregonians civil liberties and sovereignty through illegal activity and fraud.

53. Respectively requests this Court to strike down the HAVA Act and declare it unconstitutional for limiting our forms of voting. Court has jurisdiction to declare legislation inconsistent with the U.S. Constitution ("unconstitutional") and therefore null and void, Marbury v. Madison (1803).

54. Plaintiffs ask that this Court enter an order requiring Defendants to provide to Plaintiffs and public all correspondence relating to the certification of the electronic voting machines and VSTL Accreditations for 2020, 2021, and 2022. If proven unlawful, we demand that all SOS approval of machines be revoked.

55. Until Defendant can prove beyond doubt, that the voting machines, as configured in 2020 for the 2020 elections, and as configured in 2022 for the 2022 elections in Oregon, absolutely comply with every legal requirement as articulated in state and federal laws, U.S. Constitution 14th Amendment, Article I § 8 & Article II, § 1 & 8 of the Oregon Constitution, 52 U.S. Code § 20971, and HAVA of 2002 § 231; and **prove beyond a doubt** that the voting machine and election management system software does not contain codes to execute, connect to any 3rd party computer networks that can execute or enable "trap door" features or that using COTs are not infiltrating our elections though Chinese parts as described in Exhibit A of Verified Complaint, we demand halting all election machine use.

56. GRANT an emergency injunction prohibiting defendants from destruction/deletion of any election records created by law, to include all paper ballots created by voting systems, USB devices, memory cards, electronic storage devices, ballots, tabulation tapes, USB final counts from precinct and all other election records not specifically stated from the 2020, 2021, and 2022 elections:

    a. Order Defendant to preserve in their current state and counties all voting machines, correspondence, software, peripherals, and other data, paperwork, and equipment used to cast, examine, count, tabulate, modify, store, or transmit votes or voting data in the November 2020 elections held in Oregon and which are planned to be used in the same manner in the upcoming November 2022 elections to be held in Oregon;

57. Order the State of Oregon to immediately stop the use of election machines, tally systems, scanners, etc. and to reconfigure elections to be held exclusively with hand-counted paper ballots using a counting board as noted under ORS 254.485[48]:

    a. Section 1: **Ballots may be tallied** by a vote tally system or **by a counting board.**

    b. Section 3: If a counting board has been appointed, the tally of ballots may begin on the date of the election.

    c. Section 5: **A counting board shall audibly announce the tally as it proceeds. The board shall use only pen and ink to tally.**

58. Order the State and counties to supply a cost analysis of said mentioned Counting Board procedures above with election volunteer's vs a cost analysis to use and maintain electronic machines and resources required for machine operations.

59. Plaintiffs would like to cite one last case for reflection and consideration by this court.

    a. U.S. v. Throckmorton, 98 U.S. 61 (1878), "fraud vitiate everything". That said, the totality of the evidence, irreparable harm and damages, along with the factors that must guide the courts determination have been met. For these reasons, plaintiffs respectfully request this court grant plaintiffs petition for an emergency injunction and complaint against defendants, and grant plaintiffs all lawful or equitable relief

      Respectfully submitted this _____.

---

[48] https://oregon.public.law/statutes/ors_254.485

PAGE 32 – MOTION FOR EMERGENCY PRELMINARY AND PERMANENT INJUNCTION OF VERIFIED COMPLAINT

_/s/ Jennifer Rae Gunter_
1601 G St.
The Dalles, OR 97058
Telephone: 541-993-5366


_/s/ Christina Lynn Milcarek_
1496 Foxglove Street
Woodburn, OR 97071
Telephone:  708-932-0959


_/s/ Chelsea Anne Weber_
19000 S Pear Rd.
Oregon City, OR 97045
Phone:  503-422-0933

ACKNOWLEDGEMENT

Jennifer Rae Gunter

STATE OF OREGON                            )
                                           ) SS.
COUNTY OF WASCO                            )

On this ____ day of _____ before me personally appeared Jennifer Rae Gunter, who being by me duly sworn did say that she is the Petitioner named in the above-captioned action an acknowledged to me that the allegations contained therein are true according to her best knowledge and belief.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

_____
Notary Public

September 3, 2022
My commission Expires

OFFICIAL STAMP
CHELSEA E. PERRITT
NOTARY PUBLIC-OREGON
COMMISSION NO. 978387
MY COMMISSION EXPIRES SEPTEMBER 03, 2022

ACKNOWLEDGEMENT

*Christina A Milcarek*

Christina Lynn Milcarek

STATE OF OREGON                    )
                                   ) SS.
COUNTY OF MARION                   )


On this 23 day of ___August___ before me personally appeared Christina Lynn Milcarek, who being by me duly sworn did say that she is the Petitioner named in the above-captioned action an acknowledged to me that the allegations contained therein are true according to her best knowledge and belief.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.


_____
Notary Public

___April 21, 2026___
My commission Expires

```
OFFICIAL STAMP
EPISTIMEYA MARTISHEV
NOTARY PUBLIC - OREGON
COMMISSION NO. 1023071
MY COMMISSION EXPIRES APRIL 21, 2026
```

ACKNOWLEDGEMENT

Chelsea Anne Weber

STATE OF OREGON          )
                         ) SS.
COUNTY OF CLACKAMAS      )

On this **23** day of **August, 2022** before me personally appeared Chelsea Anne Weber, who being by me duly sworn did say that she is the Petitioner named in the above-captioned action an acknowledged to me that the allegations contained therein are true according to her best knowledge and belief.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

Notary Public

**November 14, 2023**
My commission Expires

OFFICIAL STAMP
LINDA MARIE KRAUSE
NOTARY PUBLIC - OREGON
COMMISSION NO. 993959
MY COMMISSION EXPIRES NOVEMBER 14, 2023